**BANK OF COUSHATTA,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

**No. 80–3152.**

United States Court of Appeals,
Fifth Circuit.
Unit A

July 6, 1981.

M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, Gilbert E. Andrews, Chief App. Sec., Gary R. Allen, Gilbert S. Rothenberg, Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

William H. Jeffress, Jr., Jamie S. Gorelick, Washington, D. C., Sidney E. Cook, Shreveport, La., Leon Gary, Jr., Baton Rouge, La., for amicus curiae (American Bank & Trust Co., et al.).

Blanchard, Walker, O'Quin & Roberts, J. Edgerton Pierson, Jr., Shreveport, La., for plaintiff-appellee.

Before GOLDBERG, CHARLES CLARK and REAVLEY, Circuit Judges.

GOLDBERG, Circuit Judge:

We affirm the decision of the district court on the basis of its Memorandum Ruling of February 21, 1980, a copy of which is

reprinted below. In so doing, we feel it necessary to note that we read the district court's ruling as being limited to the situation in which the bank's decision to transfer the operation of the insurance business to individual agents was motivated by a good faith belief that it would be illegal for the bank to continue to earn and receive insurance commission income. The district court was faced solely with such facts and, therefore, no elucidation by this court of any other issue is required.

AFFIRMED.

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

BANK OF COUSHATTA

versus                    CIVIL ACTION NO. 78–1064

United States of America

## MEMORANDUM RULING

TOM STAGG, District Judge.

On November 30, 1979, this matter came up for oral argument on the parties' cross motions for summary judgment. Plaintiff, the Bank of Coushatta, was assessed for federal income tax on credit life insurance commissions which it contended were actually earned by one of its officers, Mr. Tisdale, and the various insurance companies. After paying the taxes under protest, the Bank brought this action to recover the taxes. Both parties then moved for summary judgment. After hearing oral argument, the court granted the Bank's motion, and denied the Government's, for the reasons set out hereinafter.

In its motion, the Government argued that the case of *Commissioner v. First Security National Bank of Utah*, 405 U.S. 394, 92 S.Ct. 1085, 31 L.Ed.2d 318 (1972), requires the Bank to prove two essential elements to prevail:

(1) That it never in fact *received* the insurance commissions; and

(2) That it would have been illegal for it to have done so.

However, a thorough reading of the *First Security* case and a careful consideration of the differences between Sections 482 and 61 of the Internal Revenue Code [1] convince the court that it is not necessary for the Bank to prove it could not legally receive the commissions.

In *First Security*, a holding company owned several national banks, an insurance agency, and an insurance company. After the banks began making credit insurance available through its insurance holdings, the commissions were first "paid" to the agency; later, no commissions were paid at all. The Commissioner contended that the banks had actually earned the commissions, but that the holding company had diverted the commissions elsewhere to reduce the corporate tax impact. The Commissioner therefore reallocated the commissions to the bank, pursuant to Section 482.[2]

The Supreme Court ruled against the Commissioner since there was no showing that the banks had ever *received* the commissions. "We know of no decision of this Court wherein a person has been found to have taxable income that he did not receive and that he was prohibited from receiving." 405 U.S. at 403, 92 S.Ct. at 1091. The Court's reliance upon the fact that the banks were prohibited from receiving the commissions by federal law went to the issue of *control* under Section 482. In other words, it made no difference that the banks and the agency were controlled by the same holding company where the banks could never have received the commissions in the first place, to be diverted elsewhere by the holding company.

1. 26 U.S.C. §§ 482 and 61.

2. 26 U.S.C. § 482:

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations, trades, or businesses.

Thus, the *First Security* holding can be described as follows:

(1) The banks never received the commissions;

(2) The *reason* that the banks never received the commissions is not that the holding company diverted the funds away, but that the banks were prohibited by law from receiving the funds; and

(3) Therefore, there was neither actual nor constructive receipt of the funds by the banks.

The Supreme Court clearly did not hold that a showing that it would be illegal to receive commissions is essential for a plaintiff to prevail in a similar situation. Rather, the fact that the banks could not legally have received the commissions was cited as proof that the funds were not diverted away from them by the holding company. The issue in this case, then, is whether the Bank of Coushatta *received* the commissions, actually or constructively, as income.

Of course, in this case, § 482 is inapplicable, since there is no holding company or common control situation as in *First Security*. The Government contends that the Commissioner can properly allocate income under § 61 of the Internal Revenue Code, 26 U.S.C. § 61, just as he attempted to do in *First Security* under § 482. However, it is obvious that control is the key difference. Under § 482, the Commissioner looks to see if those who run commonly-owned businesses are juggling their income figures to produce an optimal tax assessment. In commonly-owned businesses, managers may have the control necessary to "switch" income away from one entity to another. The analysis under § 61 is similar, but different. A single person or entity is not allowed to avoid taxes on income to which he is unqualifiedly entitled, though he may try to make it appear as if he never received the income. The classic example of this is where the taxpayer tells his employer not to pay him any salary but merely to pay his bills when they become due. A taxpayer is considered in "constructive receipt" of income if it is available to him without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is made, and the Commissioner will assess taxes on the basis of this income under § 61. *Blum v. Higgins*, 150 F.2d 471 (2d Cir. 1945).

There is no showing of any kind that the Bank ever received the commissions as *income* under § 61. "Income" has been defined as "all accessions to wealth, clearly realized, and over which the taxpayer has complete dominion." *James v. U. S.*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). It is obvious that the commissions, which were held by the Bank in a temporary one-month account until distribution to the corporate officer and the insurance companies who earned the funds, could not at any time be considered *income* of the Bank. The Bank had a duty to pay the funds to those who were entitled to them, and actually did so.

Nor did the Bank constructively receive the commissions. If the Bank had *earned* the commissions, but had distributed them merely to avoid tax, the court would have to find constructive receipt. However, the Bank was more than adequately compensated for its small expenditure of labor and paperwork through the added security provided by the credit life insurance policies. Mr. Tisdale, a licensed insurance agent who is also a Bank executive, and the insurance companies earned the commissions and received them. Furthermore, Mr. Tisdale and the insurance companies paid personal income taxes on their shares of the commissions which they actually received.

Since the Bank never actually or constructively received the funds, it is irrelevant whether their receipt of the funds *would have been* illegal. It is unnecessary for the court to decide the complex issue of whether receipt of the funds by the Bank would have been illegal under Louisiana law.

For these reasons, the court finds that the Bank of Coushatta should not have been required to pay taxes on funds that it never received as income. Thus, the Bank's mo-

**78**

tion for summary judgment was GRANTED at oral argument, and the Government's motion was DENIED.

THUS DONE AND SIGNED in chambers at Shreveport, Louisiana, this 21 day of February, 1980.