# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 23, 2009

Charles R. Fulbruge III
Clerk

No. 08-60907
Summary Calendar

JOHN OLIVER GREEN

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE

Respondent-Appellee

Appeal from the United States Tax Court

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Petitioner John Oliver Green appeals the tax court's order upholding the IRS Commissioner's determination of income deficiencies, additions to tax, and penalties for tax years 1997, 1999, and 2000. Specifically, Green claims (1) that the consolidated deficiency notices were invalid as "second notices" under the Tax Code; (2) the statute of limitations had run on the asserted deficiencies; (3) the inclusion of disability payments as taxable income in 1997 was erroneous; (4) collateral estoppel bars the Commissioner's claim that the disability

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

payments were taxable; (5) his disability payments were non-taxable under 26 U.S.C. §104(a)(1); and (6) the tax court violated his due process rights by referring – in a since-deleted section – to the unrelated case of another individual named John O. Green. Finding no error, we AFFIRM the tax court's order.

The facts underlying this case are well-summarized by the tax court. Green received disability-retirement payments for a kidney condition that he developed while he was a criminal investigator with the IRS. Because the disability payments were levied to satisfy unpaid income taxes, Green ceased providing annual income statements. This action, in turn, caused the administrator of his disability benefits – the Office of Personnel Management (OPM) – to suspend payment. After Green provided income information in interrogatories in a case before the bankruptcy court, OPM obtained the information, reinstated Green's retirement-disability payments, and authorized payment of $93,305 in benefits that had accrued from July 1, 1992 through October 31, 1997. The payment was authorized on December 16, 1997. Having received notice of the authorization, Green informed OPM in writing on December 19, 1997 that his disability payment was subject to a child support order. He instructed OPM to make payments directly to his ex-wife. By letter dated December 24, 1997, OPM advised Green that it also had been served with an IRS levy against the annuity, and had made an initial deduction from Green's payment amount for the levy. The IRS and Green's ex-wife actually received the payments in 1998.

Green did not file a Form 1040 tax return for tax years 1997, 1999, and 2000, instead tendering homemade documents the parties have called "disclosure documents" for each year which claimed exemption from income

taxation due to his status as a Potawatomi Indian.[1]  On July 11, 2003, the IRS mailed Green notices of deficiency for 1997, 1999, and 2000 to the wrong address.  Green became aware of the deficiency notices and filed an untimely petition in the tax court on December 23, 2004.  The Commissioner filed a motion to dismiss the petition in order to send the notices to the correct address and provide Green time to correctly challenge the deficiencies.  On April 1, 2005, before the previous case filed by Green was dismissed by the tax court, the Commissioner mailed a consolidated deficiency notice, covering all three years at issue and assessing the same deficiencies as noticed in July 2003.  Green timely petitioned the tax court, and that court affirmed the Commissioner's determination of deficiencies, additions to tax, and penalties.

We review the tax court's conclusions of law de novo, its findings of fact for clear error, and its discretionary rulings for abuse of discretion.  *Bilski v. Comm'r*, 69 F.3d 64, 67 (5th Cir. 1995).

## Statute of Limitations

Green asserts, for the first time on appeal, that the consolidated deficiency notice upon which this action arose was invalid, because it constitutes a "second deficiency notice," in violation of 26 U.S.C. § 6212(c).  That statute explains:

> If the Secretary has mailed to the taxpayer a notice of deficiency as provided in subsection (a), and the taxpayer files a petition with the Tax Court within the time prescribed in section 6213(a), the Secretary shall have no right to determine any additional deficiency of income tax for the same taxable year . . . except in the case of fraud, and except as provided in section 6214(a) (relating to assertion of greater deficiencies before the Tax Court), in section 6213(b)(1) (relating to mathematical or clerical errors), in section 6851 or 6852 (relating to termination assessments), or in section 6861(c) (relating to the making of jeopardy assessments).

---

[1] Those documents were filed on April 15, 1998, April 17, 2000, and April 16, 2001, respectively.

§ 6212(c)(1); *see also Jones v. United States*, 889 F.2d 1448, 1450 (5th Cir. 1989). The very terms of this provision make clear that the consolidated deficiency notice here was not barred. The first deficiency notice was sent to the incorrect address on July 11, 2003, and Green filed a petition contesting the asserted deficiencies on December 23, 2004, well outside the ninety-day window provided by 26 U.S.C. § 6213(a). Green did not "file[] a petition with the Tax Court *within the time prescribed in section 6213(a)*." § 6212(c) (emphasis added). In any case, Green admits that the Commissioner issued "a second duplicate deficiency notice on 04/01/05, for the same amounts but with a different address." Again, the language of section 6212(c) shows that the bar on additional deficiency notices applies only to claims of "additional deficiency of income tax for the same taxable year." *Id*. That did not occur here. Thus, the consolidated deficiency notice was valid under sections 6212 and 6213.

Green next claims that the assessment of deficiency was barred by the three year statute of limitations set forth in 26 U.S.C. § 6501. That provision states:

> Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) . . . and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

§ 6501(a). It is undisputed that the Commissioner issued the notice of deficiency on April 1, 2005, more than three years following the submission of Green's "disclosure documents" for the 1997, 1999, and 2000 tax years. The sole question is whether the disclosures submitted by Green constitute "returns" sufficient to commence the start of the statute of limitations.

It is well-settled that, for purposes of the commencement of the statute of limitations, "[p]erfect accuracy or completeness is not necessary to rescue a return from nullity, if it purports to be a return, is sworn to as such, and evinces an honest and genuine endeavor to satisfy the law." *Zellerbach Paper Co. v. Helvering*, 293 U.S. 172, 180 (1934) (internal citation omitted); *see also Badaracco v. Comm'r*, 464 U.S. 386, 397 (1984) ("the original returns similarly purported to be returns, were sworn to as such, and appeared on their faces to constitute endeavors to satisfy the law. Although those returns, in fact, were not honest, the holding in *Zellerbach* does not render them nullities.") However, the submissions by a taxpayer must at least be a return, which 26 U.S.C. § 6103(b)(1) defines as:

> [A]ny tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

§ 6103(b)(1). The tax court's test to determine if a document qualifies as a tax return is set forth in *Beard v. Comm'r*, 82 T.C. 766, 777 (1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986). It requires that a document purport to be a return, be executed under penalty of perjury, contain sufficient data to allow calculation of tax, and represent an honest and reasonable attempt to satisfy the requirements of law. *Id.*

We have little difficulty concluding that Green's homemade "disclosure documents" are not returns. They do not purport to be returns; in fact, they state that they are tendered to the IRS because "no return of tax is required to be filed." Although they claim to be signed "under penalties of perjury," they do not include the jurat language found in standard IRS forms and typically required of a valid return. *See Williams v. Comm'r*, 114 T.C. 136, 142-43 (2000)

5

(refusing to allow taxpayers to change or add to the language of the jurat). It is unclear what "signed under penalties of perjury" means without additional language attesting that the information contained in the document is true, correct, and complete.

In addition, the information within Green's documents is insufficient to permit calculation of tax; indeed, the very purpose of the disclosures is to avoid the calculation and imposition of tax. Green simply provided a footnote – in minuscule font – asserting figures for net and gross business income, dividends, net short-term capital gain, and "ordinary partnership loss."[2] The disclosure contains no information regarding his marital status, exemptions, or deductions; all of which compels us to conclude that there is insufficient data to calculate tax liability. *See, e.g., Galuska v. Comm'r*, 98 T.C. 661, 670 (1992), *aff'd,* 5 F.3d 195 (7th Cir. 1993).

Furthermore, the tax court did not clearly err in concluding that Green did not honestly and reasonably attempt to satisfy the tax law, especially given Green's training as an IRS criminal investigator and attorney, his history of avoiding income taxes, and the tax court's 1993 admonition that he was not exempt from federal income taxes due to his membership in the Potawatomi Citizens Band Tribe of Oklahoma. *See Green v. Comm'r*, T.C. Memo 1993-152 (1993), *aff'd,* 33 F.3d 1378 (5th Cir. 1994) (unpublished opinion). Accordingly, the statute of limitations did not bar the tax assessments at issue.

## Disability Retirement Pay

Green next claims that the tax court erred in finding taxable for the 1997 tax year the $93,305 in disability payments that had been suspended when he ceased submitting income statements to OPM. First, he states that he did not receive the payment in 1997 and, accordingly, it was incorrectly assessed against

---

[2] The tax court stated succinctly, "We also don't believe the IRS should need a magnifying glass to do its job."

him for that tax year.[3] The statute requires a cash-basis taxpayer such as Green to report income in the year he receives it, even if the money goes directly to pay off the taxpayer's debt to a third party. *See* 26 U.S.C. § 451(a); *Bank of Coushatta v. United States*, 650 F.2d 75, 77 (5th Cir. Unit A 1981) ("A taxpayer is considered in 'constructive receipt' of income if it is available to him without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is made, and the Commissioner will assess taxes on the basis of this income under [§] 61.") (citation omitted). The treasury regulations explain:

> Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.

26 C.F.R. § 1.451-2(a). Here, the tax court found as fact that OPM approved a payment of $93,305 (reduced by deductions totaling $93,304) no later than December 16, 1997. A few days later, Green responded to OPM's notice by asserting that he owed child support debts to his ex-wife and instructing OPM to pay his ex-wife directly. The record evidence further establishes that on December 24, 1997, OPM sent Green a letter stating that money for an IRS levy was being deducted from his initial annuity payment. Indeed, Green stipulated all of these facts before the tax court. That the payment was not actually made to the IRS and Green's ex-wife until 1998 is not dispositive, since the income was set apart for Green in 1997. *See, e.g., Amos v. Comm'r*, 47 T.C. 65, 69 (1966). We

---

[3] The tax court perceptively recognized that Green's tactical failure to contest his 1998 notice of deficiency, combined with his claim that the $93,305 was properly taxable in that year, would result in him wholly avoiding taxation on that income.

find persuasive as evidence of constructive receipt that by December 19, 1997, the income was sufficiently available to Green that he had the authority to instruct OPM to pay his ex-wife directly. Accordingly, the tax court did not err in concluding that lump-sum payment was taxable in 1997.

Green also asserts that the deficiency was based on a "naked assessment," and, therefore, was invalid. The Commissioner's determination of a deficiency is generally afforded a presumption of correctness. *Yoon v. Comm'r*, 135 F.3d 1007, 1012 (5th Cir. 1998). However, the presumption of correctness does not apply where the government's assessment is without any foundation whatsoever; that is, when it is a naked assessment. *See Portillo v. Comm'r*, 932 F.2d 1128, 1133-34 (5th Cir. 1991).[4] Here, Green suggests that his failure to file proper returns, which resulted in the Commissioner's reliance upon the OPM's Form 1099, makes the Commissioner's deficiency notice a naked assessment.

Green's argument is much like the petitioner's unsuccessful argument in *Parker v. Comm'r*, 117 F.3d 785, 786-87 (5th Cir. 1997). There, like here, a petitioner who failed to file income tax returns claimed that the IRS's determinations were arbitrary because they were based wholly upon 1099 and W-2 forms submitted by third party payors. *Id.* at 786. Distinguishing *Portillo*, this Court explained:

> In *Portillo*, the Commissioner's determination was arbitrary because the Commissioner offered no factual basis for accepting one sworn statement, the Form 1099, while rejecting another sworn statement, the taxpayer's Form 1040. *Portillo* did not hold that the IRS must conduct an independent investigation in all tax deficiency cases. In this case, the Commissioner has not *arbitrarily* found the third-party forms credible: the Parkers never filed a Form 1040 or any other document in which they swore that they did not receive

---

[4] "'The tax collector's presumption of correctness has a herculean muscularity of Goliathlike reach, but we strike an Achilles' heel when we find no muscles, no tendons, no ligaments of fact.'" *Portillo*, 932 F.2d at 1133 (quoting *Carson v. United States,* 560 F.2d 693, 696 (5th Cir. 1977)).

the payments in question. The Commissioner has no duty to investigate a third-party payment report that is not disputed by the taxpayer.

*Id.* at 787. As in *Parker*, Green claims as arbitrary the Commissioner's decision to rely upon OPM's 1099 form in the absence of any tax return or contrary evidence. However, Green does not argue that the information within the 1099 was without foundation, nor that OPM's submission was unreliable. Accordingly, the deficiency notice was not arbitrary, and does not require abandonment of the presumption of correctness.

Green also challenges the tax treatment of his disability-retirement payments, claiming that such taxation was inappropriate because (1) collateral estoppel bars it; and (2) the payments were excludable from his income under § 104(a)(1).[5] The Commissioner correctly notes that issue preclusion does not apply here. We have explained:

> Issue preclusion, or collateral estoppel . . . promotes the interests of judicial economy by treating specific issues of fact or law that are validly and necessarily determined between two parties as final and conclusive. Issue preclusion is appropriate only if the following four conditions are met. First, the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action. Second, the issue must have been fully and vigorously litigated in the prior action. Third, the issue must have been necessary to support the judgment in the prior case. Fourth, there must be no special circumstance that would render preclusion inappropriate or unfair. If these conditions are satisfied, issue preclusion prohibits a party from seeking another determination of the litigated issue in the subsequent action.

---

[5] Green states, in conclusory fashion, that "[n]on-taxation in this case can also be found under other provisions of § 104 or § 105." However, he fails to argue for the applicability of any section other than 104(a)(1) in his opening brief. Accordingly, his claims of excludability under sections 104(a)(2), 104(a)(3), 105(a), and 105(c), which were raised before the tax court, are waived. *See* FED. R. APP. P. 28(a)(9); *United States v. Lindell*, 881 F.2d 1313, 1325 (5th Cir. 1989).

*United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994) (internal citations omitted).

Here, however, the taxability of Green's disability-retirement annuity was not litigated in his prior proceeding over a 1983 tax return – vigorously or otherwise. The Commissioner simply conceded the adjustment in the case about the 1983 return, and it was not necessary to a final judgment.[6] Indeed, even if it was necessary to the judgment, this Court has explained, "[w]hen one party to a tax case concedes or stipulates the issue upon which the court bases its judgment, the issue is not conclusively determined for purposes of collateral estoppel unless it is clear that the parties so intended." *Anderson, Clayton & Co. v. United States*, 562 F.2d 972, 992 (5th Cir. 1977). *Anderson, Clayton & Co.* relied upon the holding of *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 506 (1953), where the Supreme Court held that tax judgments based on consent agreements between taxpayers and the government do not collaterally estop litigation on the same issue for later tax years. *Id.* The Supreme Court explained "that unless the prior judgment was 'an adjudication [of] the merits, the doctrine of estoppel by judgment would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits.'" *Anderson, Clayton & Co.*, 562 F.2d at 992

---

[6] *See Green v. Comm'r*, T.C. Memo 1993-152, at *1 ("After concessions, the issues for decision are: (1) Whether petitioner's delivery of his 1983 tax return to an agent of the Internal Revenue Service (IRS) is sufficient to constitute a filing for purposes of section 6501, and if so, whether the 3-year statute of limitations under section 6501 bars assessment of tax in this case; (2) whether petitioner, a member of the Potawatomi Citizens Band Tribe of Oklahoma, is exempt from paying Federal income tax due to his Indian status; (3) whether respondent utilized grand jury matter in violation of rule 6(e) for civil audit purposes, including the preparation of the statutory notice of deficiency involved herein; (4) whether petitioner underreported his taxable income in 1983 as determined by respondent; (5) whether petitioner's understatement of tax is attributable to fraud under section 6653(b)(1) and (2); and (6) whether petitioner is liable for the addition to income tax for failure to pay estimated tax under section 6654.").

(quoting *Int'l Bldg. Co.*, 345 U.S. at 506). Accordingly, collateral estoppel does not apply.

Green argues that his disability-retirement pay should be excluded from his income under § 104(a)(1), urging that the payments were for personal injuries which are in the nature of workmen's compensation. Section 104(a)(1) states:

> Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include . . . amounts received under workmen's compensation acts as compensation for personal injuries or sickness[.]

§ 104(a)(1). The accompanying regulations allow exclusion if the taxpayer receives the pay "under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment." 26 C.F.R. § 1.104-1(b). "A taxpayer has the burden of proving entitlement to the § 104(a) exclusion." *Stanley v. United States*, 140 F.3d 890, 891 (10th Cir. 1998) (citing *Welch v. Helvering*, 290 U.S. 111, 115 (1933)). *Take v. Comm'r*, 804 F.2d 553, 557 (9th Cir. 1986), explains that section 104(a) applies only where a workmen's compensation statute requires that the injury be incurred in the course of employment. *Id.* "Statutes that do not restrict the payment of benefits to cases of work-related injury or sickness are not considered to be 'workmen's compensation acts' under section 104." *Id.* (citing *Rutter v. Comm'r*, 760 F.2d 466, 468 (2d Cir. 1985)); *see also Wallace v. United States*, 139 F.3d 1165, 1167 (7th Cir. 1998).

Here, Green devotes significant attention to the tax court's apparently erroneous conclusion that his injury was congenital and, thus, not incurred during his employment with the IRS.[7] Whatever the basis of the disability

---

[7] Green cleverly argues that he became disabled *during* his employment at the IRS; he never claims – and the record does not establish – that he became disabled due to a work-

payments, both Green and the Commissioner agree that they came from OPM's Retirement and Disability Fund ("CSRA"), 5 U.S.C. § 8348.[8] *See Merker v. Comm'r*, T.C. Memo 1997-277 (1997) ("The relevant inquiry is into the nature of the statute pursuant to which the payment is made and not the source of the particular taxpayer's injury.") As the tax court noted, the CSRA allows disability retirement whether or not the injury occurred on the job. *See Haar v. Comm'r*, 78 T.C. 864, 868 (1982), *aff'd* 709 F.2d 1206 (8th Cir. 1983). Accordingly, section 104(a)(1) does not exempt this payment from taxable gross income.

## Due Process Claim

Finally, Green argues that the tax court's erroneous reference to the case of another individual, also named John O. Green, was a due process violation. The tax court's incorrect reference to the other John O. Green was made in order to illustrate the petitioner's history of attempting to avoid income tax. A day after the release of the tax court's ruling, the court struck the incorrect language, and explained that the correction "changes neither the analysis nor the outcome of the case."

It is clear from the tax court's references to Green's interactions with the criminal justice system and prior attempts at income tax avoidance that the incorrect information did not particularly prejudice the court; in fact, the tax court explicitly stated that the incorrect information had not impacted its analysis nor the outcome. We do not believe that this error – immediately corrected by the tax court – constitutes a due process violation.

---

related injury. That the disability was not the result of a congenital defect and happened while he was employed by the IRS does not make it "work-related."

[8] Green argued before the tax court that his benefits were approved pursuant to the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8147. However, the tax court found that the benefits were received under the CSRA. Green does not particularly challenge this conclusion; instead, he appears to claim that he qualified under both the CSRA and the FECA, and his disability was paid under the CSRA because it provided a greater benefit.

Accordingly, the ruling of the tax court is AFFIRMED.