T.C. Memo. 2009-238

UNITED STATES TAX COURT

JOSEPH F. RODKEY, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7422-08.                    Filed October 20, 2009.

Joseph F. Rodkey, Jr., pro se.

<u>Julia L. Wahl</u>, for respondent.

MEMORANDUM OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $11,009
in petitioner's Federal income tax for 2006 and an accuracy-
related penalty of $2,201.80 pursuant to section 6662(a).

Unless otherwise indicated, all section references are to
the Internal Revenue Code for the year in issue, and all Rule
references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are:

(1) Whether respondent is estopped from challenging the amount of alimony deducted by petitioner;

(2) whether petitioner may deduct more than $18,000 as alimony; and

(3) whether petitioner is liable for the section 6662(a) accuracy-related penalty for the year in issue.

## Background

This case was submitted fully stipulated under Rule 122, and the stipulated facts are incorporated as our findings by this reference. Petitioner resided in Pennsylvania at the time the petition was filed. Petitioner is a practicing attorney.

Petitioner was previously married to JoAnn C. Rodkey, but since 2000 they have continually lived apart from each other, and in 2004 they divorced. In August 2004, petitioner, with the advice of his attorney, entered into a property settlement agreement (PSA) with his former wife which was incorporated into their divorce decree. The PSA originally terminated in August 2006 but was extended until the end of 2006. The PSA stated in part:

9. Alimony and Child Support

a. Commencing on March 1, 2004, Husband shall pay to Wife the sum of $3,200.00 per month through June 2006 as non-modifiable alimony and child support. The aforementioned alimony portion of said payment shall terminate upon parties' death, Wife's cohabitation or remarriage.

b. It is the understanding of the parties that the monthly payments paid by Husband to Wife for her support and maintenance, as set forth in subparagraph a. hereof, will be fully deductible by Husband for federal income tax purposes and declared as income by Wife for Federal Income Tax purposes.

c. Although the entire amount of $3,200.00 shall be tax deductible to Husband and tax includable to Wife, the parties agree that the allocation, based on Husband's net monthly income and Wife's earning capacity; of the $3,200.00 payment is $1,700.00 child support and $1,500.00 alimony. If Wife proceeds to file a child support modification action prior to the termination of the alimony obligation in June of 2006, or should either of the parties die, the entire $3,200.00 payment shall be deemed allocated ($1,700.00 child support/$1,500.00 alimony or upon Wife's death, cohabitation or remarriage, alimony shall terminate) and should Wife receive child support in excess of $1,700.00 per month Husband shall receive a dollar for dollar reduction in his alimony obligation, i.e., if Husband's child support obligation increases by $500.00 per month, his alimony obligation shall decrease by $500.00 per month. If Wife does not receive child support in excess of $1,700.00 per month, the $3,200.00 payment shall remain unallocated.

In accordance with the PSA, petitioner paid $38,400 (PSA payment) to his former wife in both 2005 and 2006, and he deducted the payment as alimony on both his 2005 and 2006 Federal income tax returns.

On October 25, 2007, the Internal Revenue Service (IRS) sent petitioner a notice of deficiency for 2005 determining a deficiency as a result of disallowing petitioner's $38,400 alimony deduction. Petitioner timely filed a petition with this Court challenging the notice of deficiency. On February 4, 2008, the IRS sent petitioner a no-change letter, which, without

discussing any of the issues, conceded that petitioner owed no additional taxes. On March 19, 2008, this Court entered a stipulated decision in docket No. 211-08 (Rodkey I), which stated: "Pursuant to the agreement of the parties in this case it is ORDERED and DECIDED: That there is no deficiency in income tax due from, nor overpayment due to, the petitioner for the taxable year 2005." Three months later, on June 16, 2008, the IRS sent petitioner's former wife a notice of deficiency determining a Federal income tax deficiency as a result of her failure to include the $38,400 PSA payment in her income in 2005.

On March 21, 2008, the IRS sent petitioner a notice of deficiency for 2006, again determining a Federal income tax deficiency and a penalty as a result of disallowing petitioner's $38,400 alimony deduction.

## Discussion

Respondent has conceded that petitioner properly deducted $18,000 of the PSA payment. The controversy concerns the remaining $20,400 that petitioner deducted as alimony. Petitioner argues that respondent is collaterally estopped from challenging the deduction because it was allowed in Rodkey I. Alternatively, petitioner claims that the entire PSA payment is alimony and deductible. Respondent asserts that the deduction may be challenged because the issue was not fully litigated in Rodkey I and that only $18,000 of the PSA payment is alimony.

Petitioner also challenges the section 6662(a) accuracy-related penalty determined by respondent.

Estoppel

Generally, the Commissioner may challenge in a succeeding year what was condoned in a previous year. Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183-184 (1957); Demirjian v. Commissioner, 457 F.2d 1, 6-7 (3d Cir. 1972), affg. 54 T.C. 1691 (1970). Under certain circumstances, however, equitable estoppel will bar the Government where there has been affirmative misconduct resulting in a misrepresentation to the taxpayer which the taxpayer relied upon to the taxpayer's detriment. United States v. Asmar, 827 F.2d 907, 912 (3d Cir. 1987); Wilkins v. Commissioner, 120 T.C. 109, 112-113 (2003). The burden of proof is on the party claiming estoppel. United States v. Asmar, supra at 912.

Petitioner has not argued that there was affirmative misconduct by respondent. Furthermore, petitioner has not argued that he relied on respondent's no-change letter for 2005. Petitioner cannot show reliance, because the no-change letter was sent in February 2008, 3 months after petitioner was notified that his 2006 Federal income tax return was being examined.

Once an issue has been litigated, collateral estoppel may apply. In Monahan v. Commissioner, 109 T.C. 235, 240 (1997), we stated:

The doctrine of issue preclusion, or collateral estoppel, provides that, once an issue of fact or law is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979)). * * *

Under the doctrine of collateral estoppel, (1) the issue to be decided in the second case must be identical in all respects to the issue decided in the first case; (2) a court of competent jurisdiction must have rendered a final judgment in the first case; (3) a party may invoke the doctrine only against parties to the first case or those in privity with them; (4) the parties must have actually litigated the issue and the resolution of the issue must have been essential to the prior decision; and (5) the controlling facts and legal principles must remain unchanged. See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006); see also Hi-Q Pers., Inc. v. Commissioner, 132 T.C. __, __ (2009) (slip op. at 16).

Petitioner argues that respondent should be collaterally estopped from challenging the deduction of the PSA payment in 2006 because the stipulated decision in Rodkey I already adjudicated the issue for 2005. Respondent contends that the issue was never actually litigated. Respondent relies on the discussion in United States v. Intl. Bldg. Co., 345 U.S. 502 (1953), where the Supreme Court held that the Government was not

collaterally estopped from rearguing a position it had conceded in a previous year, even if the concession was the basis of a court order. The Supreme Court concluded that the Government's position had not been fully litigated in the earlier proceeding and that the prior decision of this Court based on the Government's concession was "only a pro forma acceptance by the Tax Court of an agreement between the parties to settle their controversy for reasons undisclosed." Id. at 505. The Supreme Court's rationale and holding apply equally to this case. See Frank Sawyer Trust v. Commissioner, 133 T.C. __, __ (2009) (slip op. at 34-36); Green v. Commissioner, T.C. Memo. 2008-130, affd. per curiam without published opinion 322 Fed. Appx. 412 (5th Cir. 2009).

Petitioner also argues that respondent's notice of deficiency mailed to petitioner's former wife based on her failure to include the PSA payment in taxable income in 2005 provides further evidence of respondent's concession that the payment should be deductible to petitioner in 2006. But the Commissioner may take inconsistent positions to protect the public fisc. Kean v. Commissioner, 407 F.3d 186, 189 (3d Cir. 2005), affg. T.C. Memo. 2003-163. Moreover, the correct tax treatment of the payments includes the alimony portion in the payee's taxable income, so a notice of deficiency is appropriately sent to her as well as to him.

Alimony Deduction

Petitioner contends that he is entitled to deduct in full the $38,400 he paid to his former wife in 2006 pursuant to the PSA because those payments were alimony, and alimony is a deductible expense.  Section 215 permits taxpayers to deduct alimony or separate maintenance payments includable in the gross income of the recipient under section 71.  Section 71(b)(1) defines alimony or separate maintenance payment as a payment in cash if:  (1) The payment is received by a spouse under a divorce or separation instrument; (2) the divorce or separation instrument does not designate the payment as nondeductible for the paying spouse and not includable in the gross income of the payee spouse; (3) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the spouses are not members of the same household when the payment is made; and (4) there is no liability to make any payment for any period after the death of the payee spouse. A divorce or separation instrument is either a decree of divorce or separate maintenance, or a written instrument incident to such a decree; a written separation agreement; or a decree requiring a spouse to make payments for the support or maintenance of the other spouse.  Sec. 71(b)(2).  Use of the word "alimony" in the decree of divorce or separate maintenance, or in the written separation agreement, will not necessarily result in a payment's

being characterized as alimony for Federal income tax purposes. Kean v. Commissioner, supra at 189-190; Okerson v. Commissioner, 123 T.C. 258, 264 (2004).

The first three requirements of the section 71(b)(1) alimony definition are satisfied. First, the PSA payment was made under a divorce or separation instrument because the payment was made pursuant to the PSA, and the PSA was incorporated into the divorce decree. Second, the PSA does not designate the PSA payment as nondeductible for petitioner nor as not includable in the gross income of his former wife. Third, petitioner and petitioner's former wife were not members of the same household during the year in issue.

The only remaining issue is whether petitioner is liable to make any payment for any period after the death of his former wife. The first sentence of section 9.c. of the PSA states unconditionally that "the parties agree that the allocation, * * * is $1,700.00 child support and $1,500.00 alimony." But the second sentence says that "If Wife proceeds to file a child support modification action prior to the termination of the alimony obligation in June of 2006, or should either of the parties die, the entire $3,200.00 payment shall be deemed allocated", implying that if the condition is not met, the payment will not be deemed allocated. The third sentence supports that interpretation, stating that "If Wife does not

receive child support in excess of $1,700.00 per month, the $3,200.00 payment shall remain unallocated." The second and third sentences of the section seem to contradict the first sentence.

Ultimately it is not necessary to determine whether the payments are currently allocated. It is necessary to determine only which payments would continue upon petitioner's former wife's death and which would terminate. See sec. 71(b)(1)(D). According to the second sentence of section 9.c. of the PSA, upon the death of petitioner's former wife the payment is allocated $1,700 per month to child support and $1,500 per month to alimony and the alimony portion terminates. Thus, we conclude that the payment of up to $18,000 a year is alimony and anything greater does not satisfy the requirement of section 71(b)(1)(D), and is therefore not deductible.

Respondent alternatively argues that part of the PSA payment should be excluded under section 71(c), which provides that "any payment which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse" is not alimony includable to the payee spouse under section 71(a). Thus it is not deductible to the payor under section 215.

It appears that the parties to petitioner's divorce created a deliberate ambiguity in order to achieve two purposes, one relating to child support and one relating to tax treatment. It has long been the rule, however, that the labels attached by the parties to a marital settlement agreement or decree are not controlling for Federal tax purposes. See, e.g., <u>Benedict v. Commissioner</u>, 82 T.C. 573, 577 (1984). Even if the language categorizing child support payments as alimony taxable to petitioner's former wife had been unambiguous, the $1,700 per month portion would fail the test for deductibility under section 71(b). As the Court said in <u>Okerson v. Commissioner</u>, <u>supra</u> at 264-265:

> Here, the applicable Federal law is set forth in section 71, which, in its present form, provides the exclusive means by which a taxpayer may deduct a payment as alimony for Federal income tax purposes. * * * [<u>Hoover v. Commissioner</u>, 102 F.3d 842, 844-845 (6th Cir. 1996), affg. T.C. Memo. 1995-183]. Through that section, Congress eliminated any consideration of intent in determining the deductibility of a payment as alimony in favor of a more straightforward, objective test that rests entirely on the fulfillment of explicit requirements set forth in section 71. <u>Id.</u>; see also <u>Rosenthal v. Commissioner</u>, T.C. Memo. 1995-603 ("Whether or not the parties intended for the payments to be deductible to petitioner, we must focus on the legal effect of the agreement in determining whether the payments meet the criteria under section 71."). As the House Committee on Ways and Means articulated in its report on section 71 in discussing the need for such an objective test:
>
>> "The committee believes that a uniform Federal standard should be set forth to determine what constitutes alimony for Federal tax purposes. This will make it easier for the Internal Revenue Service,

the parties to a divorce, and the courts to apply the rules to the facts in any particular case and should lead to less litigation.  The committee bill attempts to define alimony in a way that would conform to general notions of what type of payments constitute alimony as distinguished from property settlements and to prevent the deduction of large, one-time lump-sum property settlements.  [H. Rept. 98-432 (Pt. 2), at 1495-1496 (1984).]"  [alteration in original.]

Although the parties to a divorce proceeding may intend that certain payments be considered alimony for Federal income tax purposes, and a court overseeing that proceeding may intend the same, Congress has mandated through section 71(b)(1)(D) that payments qualify as alimony for Federal income tax purposes only when the payor's liability for those payments, or for any payments which may be made in substitute thereof, terminates upon the payee spouse's death.  * * *

We need not decide, therefore, whether the terms of the agreement fixed a portion of the payments as child support nondeductible under section 71(a) and (c).

## Section 6662 Accuracy-Related Penalty

Petitioner contests the imposition of an accuracy-related penalty for the tax year in issue.  Section 6662(a) and (b)(1) and (2) imposes a 20-percent accuracy-related penalty on any underpayment of Federal income tax attributable to a taxpayer's negligence or disregard of rules or regulations, or substantial understatement of income tax.  Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and defines disregard as any careless, reckless, or intentional disregard.  Disregard of rules or regulations is careless if the taxpayer

does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs. Disregard of rules or regulations is reckless if the taxpayer makes little or no effort to determine whether a rule or regulation exists. Id.

Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority. See Rule 142(a); Higbee v. Commissioner, supra at 446-447.

Respondent has satisfied the burden of production by showing that petitioner deducted the entire PSA payment in disregard of the plain language of section 71. See, e.g., Stedman v. Commissioner, T.C. Memo. 2008-239; Tiley v. Commissioner, T.C. Memo. 2003-132.

The accuracy-related penalty under section 6662(a) is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, supra at 448. The decision as to whether a taxpayer acted with reasonable cause and

in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id.

Petitioner asserts that he acted with reasonable cause and in good faith. He argues that in deducting the entire PSA payment in 2006 he was just repeating what was ultimately determined by respondent to be permitted in 2005. Furthermore, petitioner points out that although he is an attorney, his practice does not include tax law.

We are not persuaded by petitioner's arguments. What respondent did in 2008 regarding the deduction in 2005 has no bearing on whether petitioner acted with reasonable cause and in good faith in 2006. The statute forbidding a deduction for payments where, as in this case, there is no liability after the death of the payee spouse, is clear. Petitioner's explanations do not demonstrate an honest misunderstanding of fact or law that is reasonable in light of his experience, knowledge, and education.

In reaching our decision, we have considered all arguments made by the parties.  To the extent not mentioned or addressed, they are irrelevant or without merit.

For the reasons explained above,

<u>Decision will be entered</u>

<u>under Rule 155</u>.