Raymond D. WALLACE,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 97–2650.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1998.

Decided April 6, 1998.

F.P. Cosby (argued), Indianapolis, IN, for Plaintiff–Appellant.

Judith A. Stewart, Office of the United States Attorney, Indianapolis, IN, Gilbert S. Rothenberg, Ellen P. Delsole (argued), Department of Justice, Tax Division, Appellate Section, Gerald H. Parshall, Jr., Department of Justice, Tax Division, Washington, DC, for Defendant–Appellee.

Before FLAUM, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Two knee injuries ended Raymond Wallace's professional football career in 1989. Wallace's team, the Pittsburgh Steelers, released Wallace and paid him $75,000 in settlement of any amounts owed under Wallace's player contract and the collective bargaining agreement between the National Football League (NFL) and the NFL Players Association. Although Wallace paid taxes on the $75,000 when he received it, he now contends that the bulk of this payment was exempt from taxation under 26 U.S.C. § 104(a)(1) as an amount received under a workmen's compensation act. The Internal Revenue Service denied Wallace's request for a tax refund, and the district court upheld that decision on summary judgment. We now affirm the judgment of the district court.

I.

Raymond Wallace was a running back and special teams player for the Steelers during the 1989 season when he injured his right knee in games against the Cincinnati Bengals and the Cleveland Browns. Wallace continued to play hurt, but ultimately his injuries required surgery. After multiple operations and extensive attempts at rehabilitation, Wallace was still unable to pass the team physical in 1990. Wallace's playing days ended when the Steelers released him on July 20, 1990.

On September 4, 1990, Wallace entered into a settlement agreement with the Steelers. The Steelers paid Wallace a negotiated amount of $10,000 and an additional $65,000 pursuant to the "injury protection" clause of the 1982 collective bargaining agreement (CBA) between the league and the players association. The injury protection clause applied to injured players who, like Wallace, were cut from their teams' rosters because they could not pass a preseason physical. The clause entitled the injured player to half of his salary for the upcoming season up to a maximum of $65,000. Thus, the Steelers paid Wallace the maximum amount allowed under the CBA's injury protection provision.

Wallace reported the entire $75,000 settlement as gross income for 1990 and paid taxes on it. Then, in September 1992, Wallace filed for workers' compensation benefits with the Pennsylvania Bureau of Workers' Compensation (the Bureau). While this claim was pending, Wallace filed a claim with the IRS requesting a refund of the taxes he paid in 1990 on the $75,000 settlement. In support of his refund claim, Wallace argued that his $75,000 settlement payment from the Steelers constituted workers' compensation. Since 26 U.S.C. § 104(a)(1) excludes from gross income all "amounts received under workmen's compensation acts as compensation for personal injuries or sickness", Wallace claimed that he was owed a refund on his 1990 tax return. Wallace's characterization of the settlement payment as workers' compensation failed to persuade the IRS, which denied his refund claim on April 14, 1994.

Wallace then filed suit in the district court, renewing his argument that the settlement amount was nontaxable under § 104(a). Three months after Wallace filed suit in the district court, the Pennsylvania Bureau of Workers' Compensation issued its decision on Wallace's workers' compensation claim. The Bureau found that Wallace was entitled to partial disability benefits under the Pennsylvania Workers' Compensation Act and ordered the Steelers to pay Wallace $200,000 in compensation benefits. However, the Bureau credited the Steelers for the $65,000 injury protection payment made in 1990, and accordingly the Bureau reduced Wallace's award by this amount.

Following the Bureau's decision, Wallace amended his complaint in the district court and abandoned his claim to a tax refund on the full $75,000. Wallace's amended complaint argued that he should receive a refund only on the $65,000 injury protection payment. The IRS moved to dismiss Wallace's complaint, and the district court, with the consent of the parties, treated the motion to dismiss as a motion for summary judgment. The court then entered judgment for the IRS, holding that § 104(a) did not apply to the $65,000 injury protection payment.

## II.

■ Wallace's appeal presents a straightforward question of statutory interpretation. Under 26 U.S.C. § 104(a)(1), a taxpayer may exclude from gross income (and therefore avoid paying taxes on) all "amounts received under workmen's compensation acts as compensation for personal injuries or sickness". The IRS's regulations interpret this section to provide for exclusion of amounts "received by an employee under a workmen's compensation act ..., or under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment." 26 C.F.R. § 1.104–1(b). In determining whether statutes that provide benefits qualify as "workmen's compensation acts" for purposes of § 104(a), courts have considered, among other factors, whether the statutory benefits were paid for work-related ailments, *see Green v. Commissioner of Internal Revenue*, 60 F.3d 142, 143 (2d Cir.1995) (per curiam); *Take v. Commissioner of Internal Revenue*, 804 F.2d 553, 557 (9th Cir.1986); whether the statute predicates benefits on a finding of fault on the part of the employer, *see Kane v. United States*, 43 F.3d 1446, 1449 (Fed.Cir. 1994); and whether the statute provides the exclusive remedy for an employee's work-related injuries, *see Craft v. United States*, 879 F.Supp. 925, 932 (S.D.Ind.1995).

■ In examining these and other distinguishing features of workers' compensation acts, courts have always emphasized that the phrases "workers' compensation acts" and "statute in the nature of a workmen's compensation act" refer exclusively to legislative and administrative enactments. *See Rutter v. Commissioner of Internal Revenue*, 760 F.2d 466, 468 (2d Cir.) (per curiam) (interpreting the "under a statute in the nature of a workmen's compensation act" language of 26 C.F.R. § 1.104–1(b) to refer only to federal and state statutes, city ordinances, and administrative regulations), *cert. denied*, 474 U.S. 848, 106 S.Ct. 141, 88 L.Ed.2d 116 (1985). In other words, unless benefits are paid pursuant to "a rule of general applicability promulgated by a public agency to govern conduct within the agency's jurisdiction," *id.*,

the benefits cannot be excluded from income pursuant to 26 U.S.C. § 104(a)(1) and 26 C.F.R. § 1.104–1(b).

Wallace concedes that the Steelers' $65,000 injury protection payment, at the time it was made, was paid pursuant to the CBA and Wallace's player contract. Indeed, the settlement agreement between Wallace and the Steelers made this explicit: "This amount [the $65,000 payment and the negotiated $10,000 payment] is paid in settlement and consideration of and in lieu of any payments required to be made by the Steelers to [Wallace] or on [Wallace's] behalf under the terms of the 1982 Collective Bargaining Agreement ...; and in settlement and consideration of [Wallace's] NFL Player Contract...." Thus, according to the terms of the settlement, the $65,000 payment was pursuant to a labor contract, not a workers' compensation act. Therefore, it may not be excluded from Wallace's income. *See Rutter*, 760 F.2d at 468 (holding that sick leave payments made pursuant to a labor contract do not qualify for exclusion from income under 26 U.S.C. § 104(a)(1) and 26 C.F.R. § 1.104–1(b)).

■ Despite the express language of the settlement agreement, Wallace argues that the decision of the Pennsylvania Bureau of Workers' Compensation transforms the $65,000 payment into an excludible workers' compensation award. The Bureau, in calculating the workers' compensation benefits owed to Wallace by the Steelers, credited the Steelers for the $65,000 the organization had paid to Wallace in 1990. Wallace infers from this that the Bureau considered the $65,000 to constitute benefits paid pursuant to the Pennsylvania Workers' Compensation Act.

Wallace exaggerates the scope and the impact of the Bureau's decision. Nowhere in its decision did the Bureau find that the Steelers' injury protection payment was made pursuant to the state workers' compensation act. As the Bureau explained in crediting the Steelers for this payment:

An employer who pays an employee out of its general funds or out of sickness or accident benefits, not as wages or salary for work performed, but in relief of an employee's incapacity to work, will be al-

**1168**

lowed a credit against its later determined obligation to pay workers' compensation benefits.

(quoting *Marsh v. Workmen's Compensation Appeal Bd.*, 673 A.2d 33, 35 (Pa. Commw.Ct.1996)). This statement does not indicate that the Bureau concluded that the injury protection payment was in fact workers' compensation benefits rather than "sickness or accident benefits" derived from a contractual or other source. In fact, the source of the Steelers' obligation to pay the $65,000 was irrelevant to the Bureau, for the Steelers were entitled to a credit under the Pennsylvania Workers' Compensation Act either way: "The fact that disability payments were made pursuant to a contractual agreement between the employer and employee does not establish that the amounts paid may not be credited against the employer's workers' compensation obligation." *Marsh*, 673 A.2d at 35. Thus, the Bureau's award of a credit to the Steelers, by itself, does not establish that the Bureau considered the Steelers' $65,000 payment to be made pursuant to the team's obligations under the state workers' compensation act.

We are also unpersuaded by Wallace's reliance on *Fotis v. Commissioner of Internal Revenue*, 57 T.C.M. (CCH) 695, 1989 WL 62429 (U.S.Tax Ct.1989). In that case, a police officer sought to exclude from income certain disability payments made to him by his employer after the officer was injured in the line of duty. Both a state statute and a labor contract mandated that the employer pay these benefits. The court held that the disability payments were made pursuant to the state statute, not the labor contract, and that the statute was in the nature of a workers' compensation act. *Id.* at *2–3. In holding that the state statute at issue was a workers' compensation act, the court stated that "[o]ur conclusion is reinforced by the fact that [the employer] applied for and received from the State Workers' Compensation Board partial reimbursement for the amounts it paid petitioner during the period of his disability." *Id.* at *2.

Wallace seizes on this quoted language as support for the proposition that a state agency's post hoc characterization of disability payments as workers' compensation benefits warrants exclusion of those payments from income under § 104(a)(1). As noted, however, there was no such characterization by the state Bureau in this case. Furthermore, the court in *Fotis* did not defer to the state agency's treatment of the benefits. Although the court attributed some evidentiary weight to the fact that the state workers' compensation board reimbursed the employer for the disability payments, the key to the court's decision was its independent analysis—following the standards announced in *Take*, 804 F.2d at 557, and *Rutter*, 760 F.2d at 468–of the nature of the statute and the conditions placed by the statute on the award of benefits. *Fotis*, 1989 WL 62429 at *2 (concluding that the statute is a workmen's compensation statute because it "distinguishes between work-related injuries and other types of injuries and provides benefits only where a policeman is injured in the performance of his duties"). Thus, *Fotis* fails to provide any support for Wallace's claim.

In conclusion, there is nothing to indicate that the injury protection payment Wallace received was anything other than what it purported to be—a settlement of the Steelers' contractual obligations under the CBA and Wallace's player contract. Because Wallace has failed to establish that he received the $65,000 payment pursuant to a workers' compensation act, as 26 U.S.C. § 104(a)(1) requires, he is not entitled to a refund of the taxes paid on that amount. We therefore affirm the district court's decision.