**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-85


UNITED STATES TAX COURT


JAMES D. KTSANES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21592-11S.                          Filed September 2, 2014.


James D. Ktsanes, pro se.

<u>Rachel L. Paul</u>, for respondent.


SUMMARY OPINION


ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's Federal income tax for 2009 of $3,634.  The issue for decision is whether any portion of the $65,000 that petitioner received in 2009 in settlement of a dispute with Union Security Insurance Co. (Union Security) is excludable from his gross income under section 104(a)(2) on account of personal physical injuries or physical sickness.  If not, then alternatively whether any portion of such amount is excludable under either section 104(a)(1) as an amount received under a workmen's compensation act or section 104(a)(3) as an amount received through accident or health insurance.  We hold that no portion of the $65,000 is excludable under any of these paragraphs of section 104(a).

---

[1] Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2009, the taxable year in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the stipulated facts and the related exhibits.[2]

Petitioner's legal residence at the time that the petition was filed was in the State of Maine.

Petitioner served in the U.S. Marine Corps, achieving the rank of sergeant. At the end of his military service he was employed by Coast Community College District (CCCD) in Orange County, California, from about 1988 through 1998, and then again from February 2004 through June 2006. During his first period of employment at CCCD petitioner worked as a campus public safety officer. During his second period of employment petitioner worked as the Assistant Director of Workforce and Economic Development, a federally funded program to help displaced workers.

While an employee of CCCD, petitioner was covered under a group long-term disability insurance policy issued by Union Security to CCCD for the benefit of its employees. The insurance premiums for the long-term disability policy were

---

[2] Respondent reserved objections in the stipulation of facts, generally based on relevancy and hearsay, to many of petitioner's exhibits. See Rule 91(d). The Court overrules respondent's objections given the more relaxed evidentiary standard applicable to small tax cases. See Rule 174(b).

paid by CCCD. Petitioner did not pay any portion of the premiums on the policy, and the monetary value of the payments for coverage under the policy was not includible in his gross income.

On or around February 22, 2006, petitioner was diagnosed with Bell's palsy, which led to his inability to work. On March 2, 2006, petitioner filed a claim for short-term disability benefits. Petitioner received short-term disability payments from Union Security from May through June 2006. Petitioner's employment with CCCD ended in June 2006.

In or around November 2006, presumably after the applicable "elimination period" provided by the policy had ended, petitioner filed a claim with Union Security for long-term disability benefits. In or around March 2007 Union Security denied petitioner long-term disability benefits on the ground that he was not totally disabled.

Petitioner then entered into extended correspondence, principally with CCCD, attempting to establish his entitlement to long-term disability benefits. When his attempts proved unsuccessful, petitioner filed a complaint on October 17, 2008, against Union Security and multiple unknown parties (identified as "Does 1 through 20" in the complaint) with the Superior Court of the State of California County of Orange. The complaint alleged in relevant part:

7. At all relevant times, there was in full force and effect a policy of insurance providing long term [sic] disability benefits, underwritten and issued by defendant, UNION SECURITY, to the Coast Community College District, which covered plaintiff as an employee (Assistant Director, Workforce & Economic Development [a federally funded program to help displaced workers]), and which promised to pay certain long term [sic] disability benefits should he become totally disabled (as defined by California law) and unable to perform the substantial and material duties of his occupation in the usual and customary way. Long Term Disability Benefits were to be paid for the duration of disability, with a monthly benefit (subject to certain offsets) of 60% of plaintiff's monthly income of approximately $6100.00 per month, for a monthly benefit of approximately $3660.00, following an initial elimination period of approximately 100 days. A true and correct copy of the Certificate of Insurance, Policy No. 403456 (hereinafter "the Policy"), originally issued by and through the Fortis Benefits Insurance Company, and subsequently underwritten by UNION SECURITY and administered by ASSURANT Employee Benefits, is attached as Exhibit "A" and incorporated herein by this reference.

8. All premiums due under the Policy have been paid to UNION SECURITY by plaintiff and/or on his behalf, at all relevant times, and plaintiff has performed all obligations under the Policy on his part to be performed.

9. On or about February 22, 2006, plaintiff became totally disabled from his occupation due to a condition of Bell's Palsy, a neuro-muscular disorder causing, among other symptoms, facial paralysis. Plaintiff became unable to work at that time and remained totally disabled through approximately August of 2007. After receiving short-term disability benefits from approximately May through June of 2006, plaintiff filed his claim for long-term disability benefits in approximately November of 2006. On March 14, 2007, by way of a letter from ASSURANT of that date from Claims Specialist Nell Horstman, defendant denied all long-term disability benefits to plaintiff, asserting that plaintiff was not totally disabled. In fact, from

February 2006 through August of 2007, plaintiff's injuries and medical condition prevented him from performing the substantial and material duties of his regular occupation in the usual and customary way, and thus was totally disabled under construing California law.

10.  Following the submission of his claim for benefits, UNION SECURITY has paid no long-term disability benefits to plaintiff.  For several months following his claim, and despite knowledge of his existing and on-going disability, documented by appropriate medical testing (for example, a positive MRI), defendant undertook little or no investigation of the claim, conducted no IME (independent medical examination), made no claims determinations until March of 2007, and paid no benefits to plaintiff, instead summarily denying benefits.

The complaint alleged two causes of action:  breach of contract and breach of covenant of good faith and fair dealing.  With respect to the breach of contract cause of action, the complaint alleged:

12.  UNION SECURITY breached the subject insurance contract by refusing without just cause to pay long-term disability benefits to plaintiff as required under the Policy.

13.  As a direct and proximate result of defendant's breach of the insurance contract, plaintiff has suffered contractual damages under the terms and conditions of the Policy, and other incidental damages and out-of-pocket expenses, all in a sum to be determined at the time of trial.

With respect to the breach of the covenant of good faith and fair dealing cause of action, the complaint alleged:

15.  UNION SECURITY has breached its duty of good faith and fair dealing owed to plaintiff in the following respects:

(a) unreasonable and bad faith failure to pay long-term disability benefits to plaintiff at a time when defendant knew that plaintiff was entitled to such benefits under the terms of the Policy;

(b) unreasonable and bad faith withholding of disability benefits from plaintiff knowing his claim to be valid;

(c) unreasonable and bad faith failure to pay long-term disability benefits to plaintiff at a time when the medical information available to defendant, including a positive MRI, showed his entitlement to benefits and at time when defendant had insufficient information within its possession to justify the denial of benefits;

(d) unreasonably denying benefits to plaintiff without adequately investigating the claim;

(e) unreasonably denying benefits at a time when defendant had conducted no independent medical examination;

(f) failing to reasonably investigate and process plaintiff's claim for long-term disability benefits;

(g) unreasonably failing to attempt to effectuate a prompt, fair, and [sic] settlement of plaintiff's claim for disability benefits at a time when liability had become reasonably clear; and

(h) unreasonably failing to adhere to California law applicable to plaintiff's claim for benefits by its failure to consider the real world marketplace for employment for plaintiff, and instead asserting that plaintiff was not disabled from "a group of jobs" which plaintiff was allegedly able to perform, as opposed to his own occupation.

* * * * * * *

17. As a proximate result of the aforementioned wrongful conduct of defendant, plaintiff has suffered, and will continue to suffer in the future, damages under the Policy, plus interest, for a total amount to be shown at the time of trial.

18. As a further proximate result of the aforementioned wrongful conduct of UNION SECURITY, plaintiff has suffered, and will continue to suffer, anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, all to his general damages in a sum to be determined at the time of trial.

19. As a further proximate result of the aforementioned wrongful business practices and conduct of defendant, plaintiff has been required to retain legal counsel to obtain the benefits and coverage due him under the Policy. Therefore, defendant is liable to plaintiff for those attorneys fees incurred by him in order to obtain the benefits under the Policy in a sum to be determined at the time of trial.

The complaint ended with a prayer for relief, wherein petitioner sought the following:

1. damages for failure to provide long-term disability insurance benefits contractually owed to plaintiff under the Policy, plus interest, including pre-judgment interest, in a sum to be determined at the time of trial;

2. general damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial (Second Cause of Action);

3. punitive and exemplary damages in an amount appropriate to punish or set an example of defendant (Second Cause of Action);

4. consequential damages and out-of-pocket expenses related to the denial of benefits in an amount which will compensate for all the detriment proximately caused by defendant;

5. *Brandt* attorney fees[3] incurred by plaintiff to obtain the benefits under the Policy in a sum to be determined at the time of trial (Second Cause of Action);

6. pre-judgment interest at the appropriate legal rate;

---

[3] Brandt v. Superior Court, 693 P.2d 796 (Cal. 1985) (holding that when an insurer withholds benefits under an insurance policy, attorney's fees reasonably incurred to compel the payment of such benefits are recoverable).

7.  costs of suit incurred herein; and

8.  such other and further relief as the Court deems just and proper.

In December 2009 petitioner and Union Security executed a Settlement Agreement and Release (settlement agreement).  It stated in relevant part as follows:

1.  <u>Prefatory Statement</u>.

       *      *      *      *      *      *      *

      a.  A dispute arose between the Parties that involved, among other things, claims regarding certain disability income benefits allegedly due under the terms and conditions of a group long-term disability insurance police issued by USIC [Union Security] to Coast Community College District ("CCCD"), * * * which provided coverage to Ktsanes as an employee of CCCD.

       *      *      *      *      *      *      *

      c.  The Parties now deem it in their best interests and for their mutual advantages to resolve, compromise and release by this Agreement all disputes between them relating to any alleged disabling condition(s), benefits allegedly due to Ktsanes under the terms and conditions of the Policy and USIC's handling and/or investigation of Plaintiff's claims for benefits, including, but not limited to, the claims described above and in Section 5 below as well as any and all future claims for benefits under the Policy.

2.  <u>Payment</u>.

USIC shall pay the Law Offices of Robert K. Scott the sum of Sixty-Five Thousand Dollars and Zero Cents ($65,000.00) without deduction or offset (hereinafter referred to as the "Payment"), made

payable to the Robert K. Scott, APC, Client Trust Account ("Trust Account"). USIC will make the Payment within ten (10) days following the tender of the executed Agreement by Ktsanes and USIC's counsel.

3. Surrender of Coverage.

Ktsanes represents, warrants, and agrees that he surrenders all of his coverage under any policy of insurance issued by USIC, including the Policy and any and all life insurance policies. Ktsanes further agrees that in the future he shall be deemed ineligible to become insured under any current or future policy issued, administered or underwritten by USIC. If Ktsanes becomes employed in the future with a group that is insured or underwritten by USIC, this paragraph will not have application.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

5. Releases, Representations and Warranties.

a. Ktsanes, on his own behalf, and on behalf of his respective predecessors, successors, heirs, assigns, agents, and legal representatives, does hereby relieve, release and forever discharge USIC and its owners, administrators, sponsors, transferees, grantees, legatees, shareholders, partners, officers, directors, brokers, employees, agents, representatives, attorneys, reinsurers, past or present subsidiaries, predecessors, successors, assigns, parent corporations, affiliated corporations or entities, employee benefit plans thereof, sponsors, plan administrators and heirs, including those who may assume any and all of the above-described capacities subsequent to the execution and effective date of this Agreement (all sometimes collectively referred to herein as "Releasees"), of and from any and all claims of any nature whatsoever, known or unknown, fixed or contingent, whether at law or at equity, from the beginning of time to the date hereof, arising out of any alleged disabling condition(s) and claims for benefits allegedly due to Ktsanes, under the Policy and/or the related benefit Plan (collectively referred to as

the "Claims") which were or could have been asserted in a Civil Action, including but without in any way limiting the generality of the foregoing, any and all claims arising out of Ktsanes' participation in the Policy and/or Plan, USIC's conduct in handling, investigating, administering or denying Plaintiff's claims for benefits under the Policy and/or Plan and any and all claims for benefits or claims resulting from any alleged known or unknown breach of any contract or statute referred to in the Civil Action, or any other alleged common count, tort, or extra contractual claims arising out of or in any way connected with the dispute surrounding the claims for benefits allegedly due to Ktsanes * * *

\* \* \* \* \* \* \*

c.  Ktsanes has received independent legal advice from attorneys of his own choice with respect to the advisability of executing this Agreement, requesting the dismissal of the Civil Action and the meaning of California Civil Code Section 1542 [relating to general release of claims].

d. Ktsanes' attorneys are knowledgeable of the facts and issues raised in the Civil Action and are experienced and competent to advise Ktsanes with regard to the terms, conditions and advisability of executing this Agreement.

\* \* \* \* \* \* \*

h.  Ktsanes acknowledges that USIC has not provided any advice to Ktsanes about the tax consequences, if any, of this Agreement and any such tax consequences are Ktsanes' sole responsibility.

6. Termination of Contractual Relationships and Rights.

Ktsanes expressly agrees and recognizes that any relationship, contractual or otherwise, previously or now existing between Ktsanes and Releasees is permanently and irrevocably terminated and any and

all insurance coverage of any kind afforded to Ktsanes by Releasees is canceled, void and terminated, effective immediately.

\* \* \* \* \* \* \*

10. <u>Tax Liability</u>.

Ktsanes understands and acknowledges that USIC will report the Payment to the Internal Revenue Service in the same manner as any periodic long-term [sic] disability benefits under the policy.

11. <u>Indemnification</u>.

Ktsanes hereby agrees to indemnify and hold any and all Releasees harmless from and against any claim, demand, damage, debt, liability, account, reckoning, obligation, cost, expense, lien, action or cause of action (including payment of attorneys' fees and costs actually incurred whether or not litigation is commenced) of any nature incurred by Releasees, or any Releasee, as a result of any person or entity asserting any rights or claims under the Policy or in connection with any of the issues raised in the Civil Action. This indemnity does not require payment as a condition precedent to recovery by Releasees, or any Releasee, against Ktsanes.

\* \* \* \* \* \* \*

18. <u>Joint Preparation</u>.

Ktsanes has cooperated and participated in the drafting and preparation of this Agreement. Therefore, any construction to be made of this Agreement shall not be construed against USIC or any Releasees.

In sum, both the relief sought by petitioner and the $65,000 payment

ultimately agreed to by Union Security in the parties' settlement agreement

contemplated a resolution of his claim for long-term disability benefits. The settlement agreement did not allocate any part of such payment to physical injuries or physical sickness; rather, the settlement agreement provided that Union Security's payment to petitioner would be reported to the IRS as long-term disability benefits under the policy.

The settlement agreement was never submitted to the California Workers' Compensation Appeals Board (WCAB) for approval, nor did petitioner obtain approval of the settlement from the WCAB.

Union Security subsequently paid petitioner $65,000 in 2009 consistent with the settlement agreement. Union Security issued a Form W-2, Wage and Tax Statement, which reported that petitioner received $65,000 of third-party sick pay in 2009.

Petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for 2009. On it petitioner acknowledged receipt of $65,000 from Union Security but excluded such amount from taxable income.

Respondent issued a notice of deficiency in June 2011. In it respondent adjusted petitioner's taxable income to include the $65,000 that petitioner had previously excluded.

Petitioner timely filed a petition for redetermination of the deficiency. Ultimately the case was recently tried before the Court.

## Discussion

We decide the issues in this case without regard to the burden of proof. Accordingly, we need not decide whether the general rule of section 7491(a)(1) is applicable in this case. See Higbee v. Commissioner, 116 T.C. 438 (2001).

Gross income generally includes all income from whatever source derived, unless specifically excluded. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955). It is also well established that statutory exclusions from gross income, such as those provided in section 104, are to be narrowly construed, see Commissioner v. Schleier, 515 U.S. 323, 328 (1995), and that the taxpayer must fall squarely within the requirements of an exclusion for it to apply, Dobra v. Commissioner, 111 T.C. 339, 349 n.16 (1998); Forste v. Commissioner, T.C. Memo. 2003-103, 2003 WL 1889626, at *7.

Section 104(a)(2) excludes from gross income the amount of any damages (other than punitive damages) received (by suit or agreement) on account of personal physical injuries or physical sickness. In addition, under section 104(a)(1) amounts received under workmen's compensation acts that compensate for occupational personal injuries or sickness are excludable from income.

Finally, under section 104(a)(3), amounts received through accident or health insurance for personal injuries or sickness are excludable from gross income unless such amounts are either (1) attributable to contributions by the employer that were not includible in the gross income of the employee or (2) paid by the employer.

Petitioner argues that the entire settlement amount in issue, $65,000, is excludable from gross income under section 104(a)(2) as an amount received on account of physical injuries or physical sickness, or, alternatively, that it is excludable under section 104(a)(1) as an amount received under California's workers' compensation laws. Although petitioner does not expressly invoke section 104(a)(3), the Court nonetheless considers whether that section might apply.

A. Section 104(a)(2)

1. Requirements for Exclusion

The Supreme Court has held that for a recovery to be excludable under section 104(a)(2), a taxpayer must "demonstrate that the underlying cause of action giving rise to the recovery is 'based upon tort or tort-type rights'; * * * [in addition], the taxpayer must show that the damages were received 'on account of

personal injuries or sickness.'"[4]  <u>Commissioner v. Schleier</u>, 515 U.S. at 337.  The

requirement that the recovery be based upon tort-like action was rooted in the

former regulations under section 104 (former regulations).  <u>See</u> <u>Simpson v.</u>

<u>Commissioner</u>, 141 T.C. 331, 345 (2013) (citing <u>United States v. Burke</u>, 504 U.S.

229, 234 (1992), and T.D. 6500, 25 Fed. Reg. 11402, 11490 (Nov. 26, 1960)); <u>see</u>

<u>also</u> sec. 1.104-1(c), Income Tax Regs. (before amendment by T.D. 9573, 2012-12

I.R.B. 498).

In 2012 the Secretary amended the regulations and abandoned the "based

upon tort or tort-type rights" requirement so long as recovery is on account of

physical injuries or physical sickness even if recovery is under a statute that does

not provide for a broad range of tort remedies.  <u>See</u> sec. 1.104-1(c), Income Tax

Regs.

The parties do not dispute the applicability of the new regulations, and in

the instant case the Court applies them as written.[5]  <u>See</u> <u>Simpson v. Commissioner</u>,

---

[4] In 1996 Congress amended sec. 104(a)(2) by adding the requirement that any amount received must be on account of personal injuries that are physical or sickness that is physical.  Small Business Job Protection Act of 1996, Pub. L. No. 104-188, sec. 1605, 110 Stat. at 1838.

[5] The new regulations may be applied retroactively at the desire of the taxpayer.  Sec. 1.104-1(c)(3), Income Tax Regs.  The new regulations are favorable to petitioner; therefore, the Court applies the regulations retroactively

(continued...)

141 T.C. at 346. In short, under the applicable regulations, some or all of the payments may be excluded from gross income under section 104(a)(2) if the taxpayer can show the amount of damages received on account of the taxpayer's physical injuries or physical sickness.

### 2. Payment Received "On Account Of" Union Security's Denial of Petitioner's Claim for Long-Term Disability Benefits

In O'Gilvie v. United States, 519 U.S. 79, 83 (1996), the Supreme Court read the phrase "on account of" to require a "strong[] causal connection", thereby making section 104(a)(2) "applicable only to those personal injur[ies] lawsuit damages that were awarded by reason of, or because of, the personal injuries." See also Murphy v. IRS, 493 F.3d 170, 175 (D.C. Cir. 2007). The Supreme Court specifically rejected a "but for" formulation in favor of a "stronger causal connection". O'Gilvie v. United States, 519 U.S. at 82-83.

The relief that petitioner sought in his complaint was causally connected (and strongly so) to the denial by Union Security of his claim for long-term disability benefits. Although petitioner's complaint alleged that he became disabled as a result of physical injuries or sickness, this "but for" connection is insufficient to satisfy the "on account of" relationship discussed in O'Gilvie for

---

[5](...continued)
for his benefit.

purposes of the exclusion under section 104(a)(2).  Petitioner would not have filed his complaint if Union Security had not denied his claim but instead paid him the long-term disability payments that he sought.  In other words, petitioner sought compensation "on account of" the denial of his long-term disability benefits, not for any physical injuries or physical sickness.  See O'Gilvie v. United States, 519 U.S. 79.  Accordingly, the Court concludes that the $65,000 payment was not made "on account of" physical injuries or physical sickness within the meaning of section 104(a)(2).

### 3.  Complaint, Settlement Agreement, and the Payor's Intent

In addition to the foregoing, when a taxpayer receives a payment under a settlement agreement, as is the case here, the nature of the claim that was the actual basis for settlement guides the Court's decision whether such payment is excludable from income under section 104(a)(2).  See United States v. Burke, 504 U.S. at 237; Simpson v. Commissioner, 141 T.C. at 339-340; Molina v. Commissioner, T.C. Memo. 2013-226, at *10.  Thus, whether the settlement payment is excludable from gross income depends on the nature and character of the claims asserted and not upon the validity of those claims.  Bent v. Commissioner, 87 T.C. 236, 244 (1986), aff'd, 835 F.2d 67 (3d Cir. 1987); Church v. Commissioner, 80 T.C. 1104, 1106-1107 (1983).  In short, the Court looks to

the specific claims for which the settlement was paid.  <u>Bagley v. Commissioner</u>, 105 T.C. 396, 406 (1995), <u>aff'd</u>, 121 F.3d 393 (8th Cir. 1997); <u>Kees v. Commissioner</u>, T.C. Memo. 1999-41, 1999 WL 54695, at *3 (citing <u>Allen v. Commissioner</u>, T.C. Memo. 1998-406).

Thus, whether a settlement is achieved through a judgment or by a compromise agreement, the question to be asked is "In lieu of what were the damages awarded?"  <u>Raytheon Prod. Corp. v. Commissioner</u>, 144 F.2d 110, 113 (1st Cir. 1944), <u>aff'g</u> 1 T.C. 952 (1943); <u>Fono v. Commissioner</u>, 79 T.C. 680, 692 (1982), <u>aff'd without published opinion</u>, 749 F.2d 37 (9th Cir. 1984).  To justify the exclusion from income under section 104(a)(2), petitioner must show that his settlement proceeds were in lieu of damages for physical injuries or physical sickness.  See <u>Green v. Commissioner</u>, 507 F.3d 857, 867 (5th Cir. 2007), <u>aff'g</u> T.C. Memo. 2005-250; <u>Ahmed v. Commissioner</u>, T.C. Memo. 2011-295, 2011 WL 6440130, at *3, <u>aff'd</u>, 498 Fed. Appx. 919 (11th Cir. 2012).[6]  The determination of the nature of the underlying claim is factual.  <u>Bagley v. Commissioner</u>, 105 T.C. at

---

[6] See <u>Espinoza v. Commissioner</u>, T.C. Memo. 2010-53, <u>aff'd</u>, 636 F.3d 747 (5th Cir. 2011); <u>Save v. Commissioner</u>, T.C. Memo. 2009-209, 2009 WL 2950838 at *2 n.5 (stating that although cases were decided under sec. 104(a)(2) before it was amended in 1996, their holding regarding the characterization of settlement proceeds in lieu of damages remains good law).

406; <u>Robinson v. Commissioner</u>, 102 T.C. 116, 126 (1994), <u>aff'd in part, rev'd in part, and remanded on another issue</u>, 70 F.3d 34 (5th Cir. 1995).

Ultimately, the character of the payment hinges on the payor's dominant reason for making the payment. <u>Green v. Commissioner</u>, 507 F.3d at 868. The Court looks first to the language of the agreement itself for indicia of purpose. <u>Id.</u> at 867; <u>Knuckles v. Commissioner</u>, 349 F.2d 610, 613 (10th Cir. 1965), <u>aff'g</u> T.C. Memo. 1964-33; <u>Robinson v. Commissioner</u>, 102 T.C. at 126. If the settlement lacks express language stating what the amount paid pursuant to the agreement was to settle or is otherwise not clear, the Court looks to the intent of the payor, considering all of the facts and circumstances. <u>Knuckles v. Commissioner</u>, 349 F.2d at 613; <u>Robinson v. Commissioner</u>, 102 T.C. at 127; <u>Ahmed v. Commissioner</u>, 2011 WL 6440130, at *3; <u>Kees v. Commissioner</u>, 1999 WL 54695, at *3. Where the agreement does not mention purpose, the Court may look at other facts that reveal the payor's intent, such as the amount paid, the evidence adduced at trial, and the factual circumstances that led to the agreement. <u>Green v. Commissioner</u>, 507 F.3d at 868. Although the belief of the payee is relevant to that inquiry, the character of the settlement payment hinges ultimately on the dominant reason of the payor in making the payment. <u>Agar v. Commissioner</u>, 290

F.2d 283, 284 (2d Cir. 1961), aff'g per curiam T.C. Memo. 1960-21; Fono v.

Commissioner, 79 T.C. at 696.

Petitioner contends that the payment he received from the settlement

agreement was to compensate him for physical injuries or physical sickness, i.e.,

his Bell's palsy, which ultimately led to him being unable to work and to filing a

claim for long-term disability. Although the complaint mentioned petitioner's

Bell's palsy, the complaint did not specifically seek relief for any physical injuries

or physical sickness. Instead, it sought damages for failure to provide long-term

disability insurance benefits, general damages for mental and emotional distress,

punitive and exemplary damages, consequential and out-of-pocket damages,

attorney's fees, prejudgment interest, and the cost of the suit.

Neither the complaint nor the settlement agreement tends to show that the

$65,000 settlement amount was paid on account of physical injuries or physical

sickness, nor does the record show that the payor's intent was to make the

payment for anything other than to satisfy petitioner's claim for long-term

disability benefits.

Additionally, the settlement agreement did not allocate any portion of the

$65,000 to physical injuries or physical sickness. Rather, the settlement amount

was paid to satisfy petitioner's claim for long-term disability benefits. Not only

does the settlement agreement not mention any physical injuries or physical sickness, it specifically states that Union Security would "report the Payment to the Internal Revenue Service in the same manner as any periodic long-term disability benefits received under the Policy". And Union Security did so by issuing a Form W-2 to petitioner reporting a payment of $65,000.

Granted, the settlement agreement's boilerplate list of claims from which petitioner agreed to release Union Security included "any and all claims * * * arising out of any alleged disabling conditions(s)". But, as just mentioned, the settlement agreement did not allocate any portion of the payment to any claim for physical injuries or physical sickness. See Molina v. Commissioner, T.C. Memo. 2013-226; Ahmed v. Commissioner, 2011 WL 6440130, at *3; Espinoza v. Commissioner, T.C. Memo. 2010-53, aff'd, 636 F.3d 747 (5th Cir. 2011); Evans v. Commissioner, T.C. Memo. 1980-142 (holding that failure to allocate a settlement requires inclusion of the entire settlement payment in income). The Court has held that the nature of underlying claims cannot be determined from a general release that is broad and inclusive, see Connolly v. Commissioner, T.C. Memo. 2007-98, and that all settlement proceeds are included in gross income where there is a general release lacking any allocation of settlement proceeds among various claims, see Evans v. Commissioner, T.C. Memo. 1980-142.

In view of the foregoing, on the evidence the Court holds that section 104(a)(2) does not serve to exclude the $65,000 settlement from petitioner's income.

B.  Section 104(a)(1)

Section 104(a)(1) excludes from gross income amounts received by an employee under a workmen's compensation act or under a statute in the nature of a workmen's compensation act that provides compensation to employees for occupational personal injuries or sickness.  Sec. 1.104-1(b), Income Tax Regs.  To qualify for the exclusion, a taxpayer must show that benefits were received under a statute or a regulation.  See Rutter v. Commissioner, 760 F.2d 466, 468 (2d Cir. 1985), aff'g T.C. Memo. 1984-525 (1984); see also Wallace v. United States, 139 F.3d 1165, 1167 (7th Cir. 1998).  Therefore, for petitioner's settlement payment to constitute an amount "received under workmen's compensation acts", the settlement agreement must comply with the statutory requirements to be valid under California workers' compensation laws.

California workers' compensation laws provide that generally the WCAB must approve any release or agreement to compromise an employer's liability for workers' compensation benefits before the release or agreement becomes valid.  Cal. Lab. Code. sec. 5001 (West 2011).  Furthermore, the parties must file the

signed release or compromise with the WCAB for the Board to enter the award on the basis of the release or agreement. Id. sec. 5002.

In the instant case, petitioner admits that he never submitted the settlement agreement to the WCAB for approval, nor did he obtain approval of the settlement from the WCAB. The settlement agreement thus fails to meet the express requirement of California's workers' compensation laws that settlement approval be obtained from the WCAB. Consequently, the $65,000 payment that petitioner received pursuant to the settlement agreement was not received under the State's workers' compensation act. See Simpson v. Commissioner, 141 T.C. at 341-342 (discussing Steller v. Sears, Roebuck & Co., 116 Cal. Rptr. 3d (Ct. App. 2010)). Accordingly, section 104(a)(1) does not serve to exclude the $65,000 settlement payment from petitioner's income.

C. Section 104(a)(3)

Generally, amounts received through accident or health insurance for personal injuries or sickness are excluded from gross income under section 104(a)(3). This exclusion does not apply, however, if the amounts are either (1) attributable to contributions by the employer that were not includible in the gross

income of the employee or (2) paid by the employer.[7] Sec. 104(a)(3); Hayden v. Commissioner, T.C. Memo. 2003-184, aff'd, 127 Fed. Appx. 975 (9th Cir. 2005).

In the instant case, petitioner received $65,000 in 2009 from Union Security in settlement of his claim that long-term disability benefits were due to him on the basis of an accident or health insurance plan sponsored by an employer, CCCD. See Watts v. Commissioner, T.C. Memo. 2009-103, 2009 WL 1391414, at *6. However, the benefits of the long-term disability insurance policy and coverage were attributable to contributions made by CCCD, petitioner's employer, and the contributions were not included in petitioner's gross income. Therefore, section 104(a)(3) does not serve to exclude the settlement payment from gross income.

## Conclusion

If in 2006 Union Security had approved petitioner's claim for long-term disability benefits under the group insurance policy issued to CCCD, receipt of those benefits would have been taxable to petitioner. However, Union Security denied the claim and petitioner found it necessary to sue, alleging breach of contract and breach of the covenant of good faith and fair dealing. The $65,000

---

[7] The exclusion does not extend to amounts attributable to deductions allowed under sec. 213 (relating to medical expenses) for any prior taxable year. See Watts v. Commissioner, T.C. Memo. 2009-103, 2009 WL 1391414, at *5 n.10.

that petitioner received in settlement of his suit essentially represented a substitute for what he would have received had his claim been approved.  Under these circumstances, no part of that payment is excludable under any subdivision of section 104(a).  Respondent's determination is therefore sustained.

To give effect to our disposition of the disputed issue,

Decision will be entered for

respondent.